## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

MIRTECH, INC., and DR. NAZIR MIR,

       Plaintiffs/Counter-Defendants,

    v.

AGROFRESH, INC.,

       Defendant/Counter-Plaintiff.

Civil Action No. 20-1170-RGA

## <u>MEMORANDUM OPINION</u>

Glenn A. Brown, REAL WORLD LAW, P.C., Wilmington, DE.
    Attorney for Plaintiffs/Counter-Defendants.


Chad S.C. Stover, BARNES & THORNBURG LLP, Wilmington, DE.
    Attorney for Defendant/Counter-Plaintiff.


March 23, 2023



**ANDREWS, UNITED STATES DISTRICT JUDGE:**

Before me is Defendant/Counter-Plaintiff AgroFresh Inc.'s motion for summary judgment. (D.I. 71). The motion has been fully briefed. (D.I. 72, 85, 89). For the reasons set forth below, AgroFresh's motion is denied.

## I.   BACKGROUND

### A. Prior Litigation and Settlement

In 2016, AgroFresh filed a lawsuit in this Court involving Dr. Nazir Mir and Mirtech, Inc. (collectively, the "Mir Parties"). *AgroFresh, Inc. v. MirTech, Inc.*, Case No. 16-662-JFB-SRF (D. Del.). This litigation settled. As part of the settlement, the Court approved a Final Consent Judgment, which incorporated a Private Settlement Agreement (D.I. 8-3, Ex. CC § 6), to resolve the claims. The Final Consent Judgment recites,

> AgroFresh is hereby declared the owner of the '216 Patent, U.S. Patent No. 8,822,382, U.S. Patent No. 8,802,140, U.S. Patent No. 9,005,657 B2, and U.S. Patent Publication Number 2014/0326620, along with all associated technology and related United States, foreign, and international patents and patent applications. The MirTech Defendants are to execute all necessary and appropriate documentation to confirm such ownership.

(D.I. 8-3, Ex. CC § 7(a)).

The Private Settlement Agreement contains an "all necessary paperwork" clause stating that the Mir Parties "agree to execute any and all paperwork necessary to confirm, perfect, and/or accomplish the assignments of any such inventions, discoveries, or improvements to AgroFresh within thirty (30) days of the Effective Date." (D.I. 8-1, Ex. AA § 2). The Private Settlement Agreement further obligates both parties "to cooperate fully, execute any and all supplementary documents and to take all additional actions that may be necessary or appropriate to give full force and effect to the terms and intent of this Agreement which are not inconsistent with its terms." (*Id.* § 20).

Under the Private Settlement Agreement, the Mir Parties "agree and warrant that the Final Consent Judgment is and will remain legally binding and enforceable and cannot be appealed, dissolved, waived, or in any way rendered unenforceable." (*Id.* § 3).

The Private Settlement Agreement also contains a fee-shifting provision in the event of litigation. Section 15 of the Private Settlement Agreement recites:

> In the event of any dispute, controversy, litigation, or other proceeding by which one Party seeks to enforce its rights under this Agreement, the Promissory Note, or the Final Consent Judgment, the prevailing Party shall be rewarded reasonable attorneys' fees, costs, and expenses incurred in connection with any such action, including actions to enforce any judgment.

(*Id.* § 15).

The Private Settlement Agreement states that Delaware law governs. (*Id.* § 23). "Delaware courts will generally honor a contractually-designated choice of law provision so long as the jurisdiction selected bears some material relationship to the transaction." *J.S. Alberici Constr. Co. v. Mid-W. Conveyor Co.*, 750 A.2d 518, 520 (Del. 2000). The Private Settlement Agreement and the Final Consent Judgment are the product from a litigation in this Court. I will therefore apply Delaware law to interpret these agreements. The parties do not dispute that Delaware law applies.

## B. Actions Leading to Litigation in this Case

Since settling the prior litigation, AgroFresh has sought to obtain patent rights in other countries. On July 25, 2018, AgroFresh requested Dr. Mir "execute certain documents necessary to confirm AgroFresh's ownership of foreign applications related to the patents identified in paragraph 7(a) of the Final Consent Judgment." (D.I. 19 at 47; D.I. 8-4, Ex. DD at 2-3). AgroFresh made similar requests that Dr. Mir execute some of these documents on six separate occasions thereafter. (D.I. 72 at 4-7; D.I. 85 at 9; D.I. 8-4, Ex. DD (letter dated July 25, 2018); D.I. 73-3, Ex. 3 at 3-5 (email dated February 13, 2019), 29-31 (email dated December 20, 2018); D.I. 73-4, Ex.

4 (email dated April 12, 2019); D.I. 8-8, Ex. HH (letter dated January 15, 2020); D.I. 8-5, Ex. EE (letter dated September 22, 2020). AgroFresh is no longer seeking Dr. Mir to execute any of the documents. (D.I. 73-6, Ex. 6 at 1; D.I. 88).

In September, 2020, the Mir Parties filed a lawsuit against AgroFresh asserting five claims: a claim under the Defend Trade Secrets Act of 2016 ("DTSA") to require AgroFresh to define its trade secret (Count I); a claim requesting the Court to construe the Final Consent Judgment and Private Settlement Agreement as an unlawful non-compete agreement (Count II); a claim for breach of contract for breaching the Commercial Agreement and Consulting Agreement (which are separate from the Private Settlement Agreement and Final Consent Judgment) (Count III); a claim of unjust enrichment based on the Commercial Agreement and Consulting Agreement (Count IV); and a request for a declaratory judgment. (D.I. 13 at 14-22; D.I. 38 at 5-9). I dismissed Counts I, II, and V without prejudice and Counts III and IV with prejudice. (D.I. 39). All counts remain dismissed. (D.I. 41).

AgroFresh, however, counterclaimed. (D.I. 19). AgroFresh sought execution on the money judgment described in the Final Consent Judgment and Private Settlement Agreement (Counterclaim I); specific performance in the form of a court order directing the Mir Parties to execute the necessary assignment paperwork (Counterclaim II); damages from the Mir Parties' breach of the Private Settlement Agreement and Final Consent Judgment (Counterclaim III); a declaratory judgment that AgroFresh may execute on the Final Consent Judgment (Counterclaim IV); and attorneys' fees (Counterclaim V). (D.I. 19 at 41-58).

The money judgment in the Final Consent Judgment and Private Settlement Agreement has by now been paid in full. (D.I. 72 at 9; D.I. 85 at 11; D.I. 61-5; *see also* D.I. 95). As a

consequence, AgroFresh is not seeking summary judgment on Counterclaims I and IV. (*See* D.I. 72 at 9).

## II.    RULE 56(a) LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Material facts are those "that could affect the outcome" of the proceeding. *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "[A] dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Id.* The burden on the moving party may be discharged by pointing out to the district court that there is an absence of evidence supporting the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Williams v. Borough of West Chester*, 891 F.2d 458, 460–61 (3d Cir. 1989). A non-moving party asserting that a fact is genuinely disputed must support such an assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by the opposing party] do not establish the absence . . . of a genuine dispute . . . ." FED. R. CIV. P. 56(c)(1). The non-moving party's evidence "must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." *Williams*, 891 F.2d at 460–61.

When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). If the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex*, 477 U.S. at 322.

## III.   DISCUSSION

### A.  Withdrawal of Counterclaim II

AgroFresh moved for summary judgment on Counterclaims II, III, and V. (D.I. 72 at 9). During the briefing on this motion, and after the Mir Parties filed their answering brief, AgroFresh filed a letter stating it was withdrawing Counterclaim II without prejudice. (D.I. 88).[1] The Mir Parties dispute whether it was proper for AgroFresh to withdraw its claims during briefing of the summary judgment motion. (D.I. 90-2, Ex. A at 2-3). The Mir Parties argue the withdrawal is untimely under Federal Rule of Civil Procedure 41(a) & (c). (*Id.*).

I agree with the Mir Parties that AgroFresh's withdrawal of Counterclaim II is untimely under Rule 41(a). FED. R. CIV. P. 41. Rule 41(a)(1)(A) permits a claim to be voluntarily dismissed without a court order "by filing (i) a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment; or (ii) a stipulation of dismissal signed by all parties who have appeared." FED. R. CIV. P. 41(a)(1)(A)(i)-(ii). Rule 41(c) states, "A claimant's voluntary dismissal under Rule 41(a)(1)(A)(i) must be made: "(1) before a responsive pleading is served; or

---

[1] A week before AgroFresh filed its motion for summary judgment, I had encouraged the parties to avoid the over-litigation that I thought was happening in this case. AgroFresh referred to this encouragement as a part of the reason for its actions. I appreciate that. I applaud that. But I would appreciate it even more if AgroFresh had been able to reach this conclusion before both sides had briefed the counterclaim.

(2) if there is no responsive pleading, before evidence is introduced at a hearing or trial." FED. R. CIV. P. 41(c)(1)-(2). AgroFresh's withdrawal of the claim during briefing for summary judgment was not stipulated to by the parties, nor was it timely. (D.I. 88). AgroFresh has not sought a court order to dismiss the counterclaim.

Therefore, I read AgroFresh's letter to say that it is no longer requesting summary judgment on Counterclaim II. *See Bush v. Raytheon Co.*, 2009 WL 10669904, at *10 (M.D. Fla. Sept. 8, 2009), *aff'd*, 373 F. App'x 936 (11th Cir. 2010) (treating a withdrawal of a claim in response to a summary judgment motion as an indication that the party does not oppose summary judgment on that claim).

Summary judgment on Counterclaim II is denied.[2] I would sign a one-page motion to dismiss Counterclaim II (with or without the Mir Parties' consent) if it were presented to me.

## B. Breach of Contract

AgroFresh alleges two separate theories for breach of contract. I address each theory in turn.

### 1. Breach of Contract Under § 3 of the Private Settlement Agreement

First, AgroFresh alleges that the Mir Parties breached § 3 of the Private Settlement Agreement, and by extension the Final Consent Judgment, by challenging the enforceability of the Final Consent Judgment. (D.I. 19 at 56; D.I. 72 at 18-19). AgroFresh argues that the Mir Parties' claims in this lawsuit sought to invalidate portions of the Final Consent Judgment and Private Settlement Agreement.

---

[2] In their Answering Brief, the Mir Parties (who apparently did not understand my comments about over-litigation) argue they are entitled to summary judgment on Counterclaim II and request that I use my authority under Rule 56(f) to grant it. (D.I. 85 at 31-32). I decline to do so.

AgroFresh cites to the Mir Parties' First Amended Complaint ("FAC") for support. For example, under Count I, the FAC states asserts the Final Consent Judgment is a "nullity" because it is "ambiguous" and "gives no clarity as to what constitutes the trade secret that [Dr. Mir] is obligated to protect." (D.I. 13 at 16). AgroFresh argues that Count II of the FAC seeks to invalidate the Final Consent Judgment as evidenced by its caption: "**THE COURT ORDER STATED AS A SETTLEMENT AGREEMENT IS NO LONGER ENFORCEABLE AS TO [AGROFRESH]'S TRADE SECRET**." (*Id.*). AgroFresh contends that Count V of the FAC seeks to invalidate the Private Settlement Agreement as it recites, "Part of the 2017 Agreement is no longer enforceable." (*Id.* at 21). The Prayer for Relief section of the FAC requests that I declare "the Court Order stated as a Settlement Agreement is no longer fully enforceable as to AgroFresh's trade secrets." (*Id.* at 23).

AgroFresh argues that these references to invalidating the agreements or declaring that certain provisions of the agreements are unenforceable demonstrates that the Mir Parties breached § 3 of the Private Settlement Agreement. (*See* D.I. 8-1, Ex. AA, ¶ 2).

The Mir Parties argue that their complaint did not seek to invalidate the Private Settlement Agreement nor the Final Consent Judgment. (D.I. 85 at 29-30). The Mir Parties, instead, contend that the complaint sought to define AgroFresh's trade secret and/or to obtain a ruling stating that the AgroFresh's trade secret was outside the scope of the Private Settlement Agreement. The Mir Parties argue that AgroFresh has not met its burden to establish there is no issue of material fact that the Mir Parties breached the Private Settlement Agreement by filing this lawsuit.

I agree with the Mir Parties that there is a genuine issue of material fact as to whether they breached the Private Settlement Agreement by filing their lawsuit. With respect to Count I of the FAC, a reasonable factfinder could determine that Count I has little to do with the Private

8

Settlement Agreement and Final Consent Judgment, let alone invalidating them. Count I alleges that AgroFresh's "claims precluding Dr. Mir from using its trade secrets violates" the DTSA and that AgroFresh has no trade secret to protect under the DTSA. (D.I. 13 at 14, 16). The FAC does refer to the Final Consent Judgment as a "nullity." (*Id.* at 16). Taking all reasonable inferences in favor of the Mir Parties, a factfinder could determine that the statement is aimed to show "there is no trade secret to be protected" (D.I. 13 at 16), not that a term of the Final Consent Judgment is invalid or generally unenforceable. Therefore, a reasonable factfinder could determine that bringing Count I does not breach the Private Settlement Agreement.

A reasonable factfinder could find that Count II of the FAC does not breach the Private Settlement Agreement. What Count II pleads is not clear. (D.I. 13 at 16-18). Taking all reasonable inferences in favor of the Mir Parties, a reasonable factfinder could read Count II to contend either that AgroFresh's trade secret is outside the scope of the Private Settlement Agreement or that AgroFresh's interpretation of the trade secret is incorrect, rather than challenging the validity of the Private Settlement Agreement. (D.I. 13 at 16 ("AF's broad interpretation . . . serves as a noncompete agreement . . . . The Private Settlement Agreement is not enforceable as to AgroFresh's trade secret . . . .")). Therefore, I find there is a genuine issue of material fact as to whether bringing Count II breaches the Private Settlement Agreement.

A reasonable factfinder could find that bringing Count V of the FAC does not constitute a breach of the Private Settlement Agreement. While Count V of the FAC recites, "Part of the 2017 Private Settlement Agreement is no longer enforceable" (*Id.* at 21), it is not clear that Count V seeks to invalidate any part of the Private Settlement Agreement. As I noted when dismissing Count V, "Count V does not clearly and expressly set forth what the Mir Parties would like the Court to declare or the grounds pursuant to which they are entitled to those declarations." (D.I. 38

at 7). Given the lack of clarity, a reasonable factfinder could determine that Count V does not seek to invalidate any portion of the Private Settlement Agreement or the Final Consent Judgment.

For the reasons stated above, summary judgment on whether the Mir Parties breached the Private Settlement Agreement and the Final Consent Judgment by filing this lawsuit is denied.

### 2. Breach of Contract Under § 2 of the Private Settlement Agreement

Second, AgroFresh argues that it is entitled to summary judgment for breach of contract because the Mir Parties failed to execute necessary paperwork to assign foreign patent applications to AgroFresh, breaching § 2 of the Private Settlement Agreement. Both parties agree that Final Consent Judgment and Private Settlement Agreement obligate the Mir Parties to "execute all necessary and appropriate documentation to confirm" ownership. (D.I. 72 at 12 (citing D.I. 8-3, Ex. CC § 7(a)); *see also* D.I. 8-1, Ex. AA §§ 2, 20; D.I. 85 at 6). The issue here is whether the documents AgroFresh provided to the Mir Parties were necessary and/or appropriate.

AgroFresh argues that the Mir Parties breached the agreements by failing to execute necessary paperwork relating to the assignment of foreign patents and patent applications on at least six occasions. Five of the six occasions involved multiple assignment documents. AgroFresh cites to emails and letters sent to the Mir Parties (or its attorneys) as evidence. For example, an email sent on July 25, 2018, requested the Mir Parties execute seven documents: a revocation and appointment for Canadian Patent Application No. 2,910,332; a revocation and appointment for Canadian Patent Application No. 2,910,044; a deed of assignment for Indian Patent Application No. 201737016801; a confirmatory assignment for European Patent Application No. 15858283.3; an assignment for European Patent Application No. 15858283.3 ("AgroFresh's European Assignment Document"); and a power of attorney form for Chilean patent applications. (D.I. 72 at 4-5 (citing D.I. 8-4 at 2-3)).

10

AgroFresh cites to additional emails showing it attempted to get the Mir Parties to execute five of the seven forms in December 2018, in April 2019, in January 2020, and September 2020. (D.I. 72 at 5-7; D.I. 73-3, Ex. 3 at 29-30; D.I. 73-4, Ex. 4 at 1; D.I. 8-8, Ex. HH at 3; D.I. 8-5, Ex. EE at 1-2). AgroFresh contends that the Mir Parties first returned signed forms on October 6, 2020, but three of the four documents the Mir Parties sent back were not the documents requested. (D.I. 72 at 7). AgroFresh contends that two of the forms were forms the Mir Parties had signed in 2018 (and already found insufficient to transfer the patent applications) and the third document was the European Patent Confirmatory Assignment form, which the Mir Parties had altered. (*Id.*).[3] AgroFresh argues that the modification of the European Patent Application Confirmatory Assignment form made it "unusable for the intended purpose." (D.I. 72 at 7).

AgroFresh cites to a letter dated January 12, 2022, to show it requested the Mir Parties execute an assignment for European Patent Application No. 15858283.3.[4] (D.I. 72 at 7 (citing D.I. 73-6, Ex. 6 at 1)).[5] AgroFresh contends that the Mir Parties did not sign the document. (D.I. 72 at 7).

AgroFresh argues that the Mir Parties breached the Private Settlement Agreement and the Final Consent Judgment each time AgroFresh requested that the Mir Parties execute "necessary" documents to assign the foreign patent applications and the Mir Parties failed to do so. (D.I. 72 at

---

[3] The fourth document appears to be the document related to the Chilean application. (D.I. 19 at 48).

[4] This document appears to be the same as AgroFresh's European Assignment Document except the date has changed to 2022 (D.I. 74-1, Ex. A; D.I. 74-2, Ex. B). Neither party has identified anything in substance that would distinguish this document from the previous one that would affect their claims. For simplicity, when I refer to AgroFresh's European Assignment Document, that will include this version along with the 2018 version.

[5] AgroFresh no longer sought execution of the other forms "[d]ue to the passage of time." (D.I. 73-6, Ex. 6 at 1).

15). AgroFresh contends that due to the Mir Parties failure to execute the documents, AgroFresh suffered damages in the form of attorneys' fees spent emailing and attempting to get the Mir Parties to sign the form. (*Id.* at 16). AgroFresh provides timesheets to demonstrate its expenses. (D.I. 73, Exs. 9-11).

AgroFresh argues that they should be entitled to summary judgment on the issue of breach of contract with respect to the non-European assignment documents. AgroFresh contends there is no dispute of fact on this issue because the Mir Parties only address why they did not sign the assignment forms for the European Patent Application, and "offer no reason for refusing to sign the other six documents." (D.I. 89 at 1).

The Mir Parties argue that summary judgment is not appropriate because there are genuine issues of material fact.

The Mir Parties state there is a genuine issue of material fact as to whether they were required to execute the proposed assignment forms. The Mir Parties cite AgroFresh's response to the Mir Parties' "First Set of Discovery Requests" to indicate that AgroFresh admits that, except for the European Patent Application assignment agreement, the proposed assignment forms are outside the scope of their claims. (D.I. 85 at 7 ("[AgroFresh] admitted and identified one document that [the Mir Parties] refused to sign—the proposed Assignment of European Patent Application.")).

AgroFresh's discovery responses offer support for the Mir Parties' argument.  For example, AgroFresh's response to interrogatory No. 2 recites, "AgroFresh states that the Mir Parties failed to execute the following documents in violation of their obligations under the Private Settlement Agreement and Final Consent Judgment: an assignment document related to European Patent Application No. 15858283.3." (D.I. 85-9, Ex. H at 4-5). AgroFresh's position that its claims are

limited to AgroFresh's European Assignment Document is further emphasized in other responses to the interrogatories. For example, in response to request for admission number 2, AgroFresh noted, "AgroFresh's claims . . . only relate to the Mir Parties' failure to properly execute a document necessary for European Patent Application No. 15858283.3." (*Id.* at 5-6; *see id.* at 8 (same), 10 (same), 28 (same)). Therefore, the Mir Parties have identified facts in the record to raise a dispute as to whether these other documents are at issue.[6]

With respect to AgroFresh's European Assignment Document, the Mir Parties argue they are not in breach by refusing to sign the documents provided by AgroFresh. The Mir Parties contend that the Private Settlement Agreement "obligates [the Mir Parties] to execute any 'paperwork necessary to confirm, perfect, and accomplish the assignments of any such inventions, discoveries, or improvements of AgroFresh.'" (D.I. 85 at 12 (citing D.I. 8-1, ¶ 2)). The Mir Parties argue that AgroFresh's European Assignment Document "does more than 'confirm, perfect, or accomplish' the assignment." (D.I. 85 at 12).

The Mir Parties, instead, contend that AgroFresh's European Assignment Document goes beyond the scope of the Private Settlement Agreement. (*Id.* at 14-15). For example, the Mir Parties contend that the document requires "Dr. Mir to assist in the prosecution of the patent [application] without [compensation]." (*Id.* at 8). Overall, the Mir Parties argue that the European Patent Assignment gives AgroFresh seven additional rights and burdens the Mir Parties with six additional obligations. (*Id.* at 14-15). The Mir Parties provide declarations from "three legal experts to establish that the proposed assignment did more than assign patents and patent applications as intended by the [Private Settlement Agreement]." (*Id.* at 13).

---

[6] The Mir Parties raise arguments related to this point in their sur-reply brief. (D.I. 90-2, Ex. A at 4). I disregard those arguments as they should have been raised in their Answering Brief.

The Mir Parties contend that Dr. Mir was prohibited from signing the documents because to do so would require Dr. Mir to perjure himself. (D.I. 85 at 8). The Mir Parties do not explain what this perjury would be, but it appears it would be because Dr. Mir and Mir Tech have an obligation to acknowledge the support from, and rights of, the U.S. government in the invention. (D.I. 8-6, Ex. FF at 2).

The Mir Parties also contend that AgroFresh's European Assignment Document is not necessary to transfer the patent application because other documents exist that would suffice to do so without bestowing additional rights on AgroFresh or burdening the Mir Parties with additional obligations. The Mir Parties argue that the only necessary documents to transfer the European Patent Application are the "EPO standard assignment Forms 5050 and 5055." (D.I. 85 at 14). The Mir Parties cite to their "legal expert" for support. (*Id.* (citing D.I. 82, ¶ 10)).

The Mir Parties question whether AgroFresh has suffered damages if the Mir Parties are found to have breached the Private Settlement Agreement and the Final Consent Judgment. The Mir Parties cite to the fact that the '216 U.S. Patent has been finally invalidated[7] and that the European Patent Application No. 15858283.3 has been rejected "for lack of novelty." (D.I. 85 at 22-23). Therefore, the Mir Parties argue that AgroFresh cannot claim damages from not obtaining the European patent. (*Id.*). The Mir Parties also contend there is an issue of material fact as to the amount of damages AgroFresh could claim as their timesheets extend from 2018 – before the lawsuit was filed – to present – after the Mir Parties' claims were dismissed. (*Id.* at 23).

---

[7] The European Patent Application 15858283.3, which AgroFresh requests the Mir Parties to transfer, "is based on a Request for Entry into the European Phase of Patent Cooperation Treaty Application No. PCT/US2015/059680 ('PCT '680')." (D.I. 84, ¶ 4). PCT '680 claims priority to the patent application that issued as the '216 Patent. (*Id.*).

Both parties dispute the admissibility of the witness declarations submitted with their respective briefs. Therefore, before determining whether a genuine issue of material fact exists in the record, I must first determine what evidence is in the record.

### a. AgroFresh's Evidence

AgroFresh has submitted three declarations: (1) the Stover Declaration (D.I. 73), (2) the Johnson Declaration (D.I. 74), and (3) the Williams Declaration (D.I. 75). The Mir Parties argue all three contain inadmissible evidence and should be disregarded for purposes of this motion.

### i. Stover Declaration

The Mir Parties argue that the Stover Declaration is inadmissible for a variety of reasons. First, the Mir Parties argue the declaration and exhibits should be ignored because Mr. Stover, as AgroFresh's attorney, cannot testify in this case. (D.I. 85 at 18-20). I disagree. He can submit a declaration. Mr. Stover's declaration mostly describes AgroFresh documents produced in the litigation.  Mr. Stover provides the corresponding Bates Number for exhibits 1-8.

Exhibits 9-11 do not have a Bates Number. These exhibits are timesheets for documenting attorneys' fees. Mr. Stover, as an attorney at the law firm and participant in the case, would have personal knowledge over those expenses. He also explains that they are admissible business records.

Therefore, Mr. Stover's declaration and exhibits are admissible evidence.

### ii. Johnson Declaration

The Mir Parties argue that the Johnson Declaration is inadmissible because it is not based on Mr. Johnson's personal knowledge. (D.I. 85 at 20-21).[8] I disagree. The Johnson Declaration

---

[8] In their sur-reply brief, the Mir Parties argue that the Johnson Declaration should be excluded because it is what was not disclosed before AgroFresh moved for summary judgment. (D.I. 90 at 2-3; D.I. 90-2 at 5-6). This is an argument that could and should have been raised in their answering brief. Therefore, the Mir Parties waived this argument.

has two exhibits, which are the 2018 and 2022 versions of AgroFresh's European Assignment Document. (D.I. 74, Exs. A-B). The Johnson Declaration states that they were prepared by his law firm, of which he is Patent Director. (D.I. 74, ¶¶ 2, 5-6). Even if Mr. Johnson did not have a hand in preparing the documents, he has reviewed them. (*Id.*, ¶¶ 7-8). Mr. Johnson is registered as a Patent Attorney with the European Patent Office (*Id.*, ¶ 2), and, therefore, would at least be qualified to offer his opinion as to whether the documents would be accepted by the European Patent Office. *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit . . . used to support or oppose a motion must . . . show that the affiant or declarant is competent to testify on the matters stated.")

The Mir Parties also argue that Mr. Johnson's declaration does not provide facts to support his conclusion that the documents are effective to transfer ownership. I find that this goes more to the weight of the evidence rather than admissibility.

Therefore, the Johnson Declaration is admissible.

### iii.   Williams Declaration

The Mir Parties argue that the Williams Declaration is inadmissible because it contains hearsay statements or states information about which Mr. Williams lacks personal knowledge. (D.I. 85 at 17-18). I agree. The statements in paragraphs 11, 22, and 26 are hearsay as they cite statements made to Williams by other people. (D.I. 75, ¶¶ 11 ("AgroFresh's United States counsel, including myself, were informed by international counsel . . . ."), 22 ("AgroFresh's European counsel explained to me . . . ."), 26 ("AgroFresh's European counsel, . . . again confirmed to me . . . ."). This is classic hearsay. FED. R. EVID. 802. AgroFresh does not argue that any hearsay exception applies.

I also find that the Williams declaration is not admissible to the extent it states that the documents sent to the Mir Parties were necessary to transfer the patent applications. (*See e.g.*, D.I. 75, ¶¶ 16, 20). Williams does not purport to be an expert on international law or the patent systems

in foreign countries. Williams also acknowledges that he did not prepare the documents. (*Id.*, ¶ 14 ("Counsel in each respective jurisdiction prepared the documents sent to the Mir Parties on July 25, 2018.")).

The Williams declaration is admissible on issues that are not in dispute: that AgroFresh sent the notices to the Mir Parties informing them that certain documents needed to be signed. The Williams declaration is not admissible to the extent it purports to support the substance of the notices or the necessity or adequacy of the assignment documents.

### b.  Mir Parties' Evidence

In their Answering Brief, the Mir Parties provide declarations of three "legal experts" for support: the Rueppell Affidavit (D.I. 84); the Richards Affidavit (D.I. 82); and the Heble Affidavit (D.I. 83). The Mir Parties also provide the Yam Affidavit, which appears to be an affidavit from a fact witness. (D.I. 80).

AgroFresh argues that these declarations are untimely under Rule 26(a)(2)(A)-(B). (D.I. 89 at 6-8).

Federal Rule of Civil Procedure 37(c)(1) provides, "If a party fails to provide information or identify a witness as required by Rule 26(a) . . . the party is not allowed to use that information or witness to supply evidence on a motion . . . unless the failure was justified or is harmless." FED. R. CIV. P. 37(c)(1). AgroFresh contends that Rule 37(c)(1) dictates the declarations should be struck because the Mir Parties first disclosed them to AgroFresh with their answering brief, well past the close of discovery. (D.I. 89 at 7).

The Mir Parties argue the declarations are not untimely. The Mir Parties cite to Rule 26(a)(2)(D), which recites:

> *(D) Time to Disclose Expert Testimony.* A party must make these disclosures at the times and in the sequence that the court orders. Absent a stipulation or a court order, the disclosures must be made:

> (i) at least 90 days before the date set for trial or for the case to be ready for
> trial; or
> (ii) if the evidence is intended solely to contradict or rebut evidence on the
> same subject matter identified by another party under Rule 26(a)(2)(B) or (C),
> within 30 days after the other party's disclosure.

The Mir Parties argue that the scheduling order is silent as to the disclosure of expert witnesses and a trial date has not been set (D.I. 44), and, therefore, they comply with Rule 26(a)(2)(D)(i). (D.I. 90-2, Ex. A at 4-5). In the alternative, the Mir Parties argue that the declarations are being offered to rebut evidence provided by AgroFresh in its motion for summary judgment, and they provided the evidence within 30 days of that disclosure. (*Id.* at 5). The Mir Parties, therefore, argue they comply with Rule 26(a)(2)(D)(ii).

I find the declarations are admissible under Rule 26(a)(2)(D)(i). The scheduling order is silent with respect to the disclosure of expert witnesses. (D.I. 44). AgroFresh cites to *Nippo Corp./Int'l Bridge Corp. v. AMEC Earth & Env't, Inc.*, 2011 WL 1196922, at *2 (E.D. Pa. Mar. 30, 2011) for support that a declaration attached to a summary judgment motion should be excluded. In *Nippo*, however, the scheduling order specified a deadline for expert reports. That deadline is missing here.

I now turn to each declaration.

### i.   Rueppell Affidavit

The Rueppell Affidavit is offered as a declaration from a "legal expert." Much of this affidavit, however, purports to offer legal conclusions that are for me to draw. Mr. Rueppell does not purport to know anything about the European Patent Office procedures. Paragraphs 4-11 appear to interpret AgroFresh's European Assignment Document using typical contractual interpretation principles. (D.I. 84-1, Ex. 1). To put it another way, this is just attorney argument, not expert testimony. Contract interpretation is a job for the Court.   Therefore, I find such statements to have no evidentiary value.

18

Paragraphs 12-13 appear to be Mr. Rueppell testifying about content of emails. (D.I. 84-1, Ex. 3; D.I. 84-1, Ex. 4). To the extent he is testifying to the truth of the matters asserted in those emails, that is clearly hearsay. The opinions of other lawyers stated in emails carry no weight.

Therefore, the Rueppell Affidavit is admissible, but, for the reasons stated above, has little useful evidentiary value.

### ii.   Richards Affidavit

The Richards Affidavit is admissible. Mr. Richards is a European Patent Attorney and admitted to practice before the European Patent Office. (D.I. 82-3, Ex. 1). He offers his opinions on the procedures and practices of the European Patent Office, and whether the assignment form (D.I. 82-3, Ex. 3) complies with the European Patent Convention. *See* FED. R. CIV. P. 56(c)(4) ("An affidavit . . . used to support or oppose a motion must . . . show that the affiant or declarant is competent to testify on the matters stated.").

### iii.   Heble Affidavit

I find the Heble Affidavit has little evidentiary value. Dr. Heble states he has "significant experience developing and managing patent portfolios in Europe." (D.I. 83, ¶ 2). His CV states that he has "prepared and prosecuted global patent portfolio[s]," provided guidance on global IP strategies, and has experience with EP oppositions. (D.I. 83-6). That does not establish that Dr. Heble has had experience with the European Patent Office. Dr. Heble is not admitted to practice before or licensed with the European Patent Office. (D.I. 83-6).

Dr. Heble purports to identify (1) a way to cure a submission to the EPO and (2) language in AgroFresh's European Assignment Document that is unnecessary to effectuate the transfer of the European Patent Application. (D.I. 83, ¶¶ 10-11). Given that Dr. Heble's credentials do not support that he is qualified to testify about these topics, I will disregard these opinions. *See* FED. R. CIV. P. 56(c)(4).

19

### iv.   Yam Affidavit

The Yam Affidavit is not admissible. Dr. Yam appears to be testifying as a fact witness, rather than an expert witness, and therefore Rule 26(a)(2)(D) does not apply to him. The Mir Parties offer no explanation as to why Dr. Yam was not previously disclosed under Rule 26(a)(1) or why his disclosure now is timely. (*See* D.I. 90-2, Ex. A at 4-5 (addressing only the "three expert witnesses")). Therefore, the Yam Affidavit is not considered for purposes of this motion.

### c.  Merits of the Breach of Contract Claims

After reviewing the evidence in the record, I find there exist genuine issues of material facts with respect to both of AgroFresh's theories for breach of contract.

### i.   Assignment Documents for Non-European Patent Applications

The Mir Parties citation to AgroFresh's interrogatory responses indicate that AgroFresh took the position in this litigation that only the European Patent Application assignment documents were at issue. There is at least an issue of material fact as to whether AgroFresh claims relating to the non-European Patent Application documents are relevant to their claims for breach of the Private Settlement Agreement or if it waived such claims. Therefore, summary judgment on AgroFresh's claims for breach of contract for the Mir Parties' failure to execute these documents is denied.

### ii.   AgroFresh's European Assignment Document

With respect to AgroFresh's European Assignment Document, I find there is a genuine issue of material fact as to whether this agreement is "necessary" and/or "appropriate."

AgroFresh has established there is no dispute of material fact that the agreement would transfer the application. AgroFresh's witness Mr. Johnson states that the European Patent Office

would have accepted the agreement. (D.I. 74, ¶¶ 7-8). The Mir Parties do not offer any evidence to show that the document would not be effective.

The Mir Parties, however, argue that AgroFresh's European Assignment Document goes beyond being what is "necessary" for the transfer. (D.I. 85 at 12-16). The Mir Parties have identified aspects of AgroFresh's European Assignment Document that may go beyond the Private Settlement Agreement and may not be necessary to transfer ownership of the patent. For example, the Richards Affidavit states, "[N]othing in the European Patent Convention requires any statement of the reasons why an assignment is made, any obligation with respect [to] know-how, warranties about the property being transferred or appointment of anyone as their attorney." (D.I. 82, § 11). AgroFresh's European Assignment Document does relate to the transfer of "Know-how" and contains additional warranties. (D.I. 8-4, Ex. DD at 10-11).

The Mir Parties argue that the agreement is not "necessary" because the European Patent Office's Forms EP5050 and EP5055 would be sufficient to effectuate the transfer. (D.I. 85 at 14). They may even be right.  (*See* D.I. 88).[9] The Mir Parties cite to these forms to support their argument that AgroFresh's European Assignment Document contains unnecessary provisions. (*Id.*). The Richards Affidavit supports this. (D.I. 82, §§ 9-10)

AgroFresh does not address the Mir Parties' arguments that AgroFresh's European Assignment Document conveys more than is covered by the Private Settlement Agreement. Neither does AgroFresh address whether the forms cited by the Mir Parties would be sufficient to assign the patent application.

---

[9] Ten months have passed.  Whether the forms were actually submitted, and, if so, whether they were considered sufficient, are not in the record.  I would have expected AgroFresh to advise me if they had been rejected.

21

I find there is a genuine issue of material fact as to whether AgroFresh's European Assignment Document is "necessary" and/or "appropriate" to effectuate transfer. Therefore, AgroFresh's motion for summary judgment is denied.

### C. Attorneys' Fees

Because I have denied AgroFresh's motions for summary judgment on breach of contract, it is premature to identify a prevailing party. Therefore, AgroFresh's motion for summary judgment for attorneys' fees is also denied.

## IV.   CONCLUSION

For the reasons stated above, AgroFresh's motion is denied.

An appropriate order will issue.