IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MIRTECH, INC. and DR. NAZIR MIR,<br><br>    Plaintiffs/Counter-Defendants,<br><br>v.<br><br>AGROFRESH, INC.,<br><br>    Defendant/Counter-Plaintiff. | Civil Action No. 20-1170-RGA |

MEMORANDUM

On July 11, 2023, I entered a "final appealable judgment" in this case. (D.I. 171-1 at 6–7, referring to D.I. 144).

Two weeks later, on July 25, 2023, Plaintiffs filed a motion for sanctions, primarily citing Rule 11 of the Federal Rules of Civil Procedure. (D.I. 152). Briefing on the motion was completed on September 13, 2023. (D.I. 164). A few days later, on September 21, 2023, Plaintiffs filed a notice of appeal. (D.I. 165). On September 19, 2024, the mandate of the Court of Appeals for the Third Circuit issued; the appeal was dismissed for lack of jurisdiction. (D.I. 171). The court's opinion (D.I. 171-1) explained that the notice of appeal was untimely.

I took no action on the sanctions motion while the appeal was pending. I now consider it.

The motion states that Defendant made numerous false statements to the effect that Plaintiffs were required to sign, but did not sign, various documents so that Defendant could show Patent Offices in India, Canada, and Chile that Defendant was the assignee of Indian patent application no. 201737016801, Canadian patent application no. 2,910,633, and some Chilean patent applications. (D.I. 152 at 12–15). The motion identifies ten documents in which Defendant's attorneys made the supposed false statements. (*Id.* at 4–12). They are four letters

1

dated July 25, 2018, January 15, 2020, February 14, 2020, and September 22, 2020, all of which were exhibits to Defendant's answer and counterclaims (D.I. 8); two emails dated December 20, 2018 and February 13, 2019, which were in an email chain that was an exhibit to a declaration (D.I. 73-3); and four separate pleadings, motions, or briefs, which include an amended answer and counterclaim filed December 4, 2020 (D.I. 19), a brief in support of summary judgment filed April 11, 2022 (D.I. 72), a motion for reargument filed April 5, 2023 (D.I. 101), and an answering brief filed May 31, 2023 (D.I. 116).

Defendant responded that the various statements it made were true. (D.I. 163 at 2). As to the Indian patent application, Defendant says Plaintiffs' documents show that the Indian Patent Office did not grant the patent to Defendant until June 25, 2021, after Plaintiffs signed the Indian documents on October 6, 2020. (*Id.* at 6). Defendant's response on the Canadian and Chilean patent applications is to the same effect—that Plaintiffs wrongly did not sign the relevant documents until October 2020. (*Id.* at 7). Defendant also addresses the steady stream of communications from it to Plaintiffs before 2020, explaining, among other things, that most of the communications between the parties predated the lawsuit and therefore cannot be false statements that implicate Rule 11.[1] (*Id.* at 8). Defendant cites Rule 11(c)(2) of the Federal Rules of Civil Procedure for the proposition that I should award attorney's fees to it as the "prevailing party" on this motion. (*Id.* at 19).

Plaintiffs filed a reply brief. (D.I. 164). The first seven pages make entirely new arguments that are not even hinted at in Plaintiff's motion. (*Id.* at 1–7). Arguments raised for

---

[1] I think the communications are strong support for the conclusion that Defendant's counsel had a very reasonable basis, after reasonable inquiry and consultation with foreign lawyers, to conclude that Plaintiffs had not signed the necessary papers. That conclusion, expressed at length, repeatedly, and before any litigation, is consistent with the representations made during the litigation.

the first time before a district court in a reply brief are deemed forfeited. *See In re Niaspan Antitrust Litig.*, 67 F.4th 118, 135 (3d Cir. 2023); *Jaludi v. Citigroup*, 933 F.3d 246, 256 n.11 (3d Cir. 2019).

Even on the last three pages of the reply brief, which contain, among other things, some mention of the Indian and Canadian patent applications,[2] only two of Plaintiffs' arguments have any relation to an issue raised in their Opening Brief. (D.I. 164 at 8–10). One concerns a footnote, which I address on page 9 of this Memorandum. The other concerns Defendant's responses to requests for admissions. (*Id.* at 9). Defendant's counsel stated multiple times in one document that Defendant objected to requests related to Canadian patent application no. 2,910,633 and Indian patent application no. 201737016801 because they were not at issue in the litigation. (*See* D.I. 101-3 at 2–11). The difficulty with Plaintiffs' argument is that Defendant amended the responses to drop the objections and to respond to the requests for admissions on the merits. (*Id.*).

The reply brief fails otherwise to engage with any of the arguments raised in Defendant's answering brief.

The relevant portion of Rule 11 states that, by signing or filing a "pleading, written motion, or other paper," an attorney "certifies" that the attorney believes, based upon reasonable inquiry, that "the factual contentions have evidentiary support." FED. R. CIV. P. 11(b)(3). The Third Circuit has explained:

> A district court must determine whether the attorney's conduct was objectively reasonable under the circumstances. Sanctions are to be applied only in the exceptional circumstance where a claim or motion is patently unmeritorious or

---

[2] The brief discussions in the last three pages of attorney MacGill and of European and U.S. patent applications are new material and argument relating to them is forfeited. *See Niaspan*, 67 F.4th at 135; *Jaludi*, 933 F.3d at 256 n.11.

frivolous. Rule 11's primary purpose is not wholesale fee shifting but rather correction of litigation abuse.

*Ario v. Underwriting Members of Syndicate 53 at Lloyds for 1998 Year of Acct.*, 618 F.3d 277, 297 (3d Cir. 2010) (cleaned up and citations omitted).

Plaintiffs describe what they point to as "false representations," and Defendant responds that they are not false. For purposes of Rule 11, I think the relevant standard is whether there has been reasonable inquiry sufficient for the attorney to be able to represent that the "factual contentions have evidentiary support." *See* FED. R. CIV. P. 11(b)(3).

Plaintiffs' identification of the four letters filed as exhibits to Defendant's answer and counterclaims (D.I. 8-4, 8-5, 8-8, 8-10) as violating Rule 11 is, in my opinion, frivolous. The letters are cited in Defendant's answer and counterclaims to show support for the allegations in Defendant's counterclaims that Defendant made repeated requests that Plaintiffs take various actions. (D.I. 8 at 38–40 (¶¶ 32, 34, 39, 40)). Plaintiffs do not claim that what Defendant alleges in those paragraphs—that it made repeated requests for various documents—is false. Similarly, Plaintiffs' identification of the two emails that are part of an email thread attached as an exhibit to counsel's declaration (D.I. 73-3) are described in the accompanying declaration as "a true and accurate copy of an email thread." (D.I. 73 ¶ 6). Plaintiffs do not claim that the email thread is not a true and accurate copy.[3]

Plaintiffs claim that four paragraphs of Defendant's answer to the amended complaint and amended counterclaims are "indisputabl[y]" false. (D.I. 152 at 7–8, quoting D.I. 19 at 21–22

---

[3] In the brief that the declaration accompanied, the email thread is described. (D.I. 72 at 5). Plaintiffs do not cite that paragraph in their current motion.

4

(¶ 45), 47–48 (¶¶ 32, 34), 50 (¶ 41)). All four paragraphs describe what Defendant or its counsel stated in correspondence. Plaintiffs do not claim that the descriptions are erroneous.[4]

Plaintiffs claim that one paragraph of Defendant's Opening Brief in support of Summary Judgment was "indisputabl[y]" false. (D.I. 152 at 8–9, quoting D.I. 72 at 4–5). The quoted paragraph describes and cites a letter written in July 2018. (*See* D.I. 8-4). The paragraph accurately describes the letter.

Plaintiffs claim that various sentences and parts of sentences on four pages of Defendant's motion for reargument are "indisputabl[y]" false. (D.I. 152 at 10–11, quoting D.I. 101 at 2, 5, 6, and 8). The common thread of the quoted portions is the assertion by Defendant that Plaintiffs did not execute the necessary documents and that since Plaintiffs had not argued in their briefing that they did, summary judgment for Defendant should have been granted.

As to whether the documents in a particular form were necessary, Defendant thought they were. (*See* D.I. 163 at 6–7). I address the Indian, Canadian, and Chilean disputes in that order.

In regard to a patent assignment in India, Defendant wanted Plaintiffs to sign a "Deed of Assignment" that included the phrase "further to the Consulting Agreement between MirTech and AgroFresh dated as of January 1, 2011" (D.I. 8-4 at 1, 4 of 19 (request of July 25, 2018)), but Plaintiffs did not sign it. Instead, Plaintiff Mir was "willing to sign the Standard Patent Assignment documents." (D.I. 73-3 at 33 of 37 (email of December 20, 2018)). Plaintiff Mir soon thereafter "modified the relevant assignments." (*Id.* at 13 of 37 (email of December 31, 2018)). It appears the modification was to drop the phrase about the Consulting Agreement.

---

[4] Plaintiffs bold the last sentence in paragraph 32 of the counterclaims while quoting it. (D.I. 152 at 7). Presumably, that is because the last sentence states that obtaining the requested documents was "necessary," and Defendant disputes whether that was so. The bolded sentence followed a description of what Defendant sought in July 2018. The cited exhibit (D.I. 8-4) provides a reasonable basis for believing that the documents were then thought to be necessary.

(D.I. 152-2 at 268–69 of 523 (assignment signed by Plaintiffs in December 2018)). Defendant filed the modified Deed of Assignment in the Indian Patent Office on February 6, 2019. (*Id.* at 282–86; D.I. 181 at 3). After this litigation began, on October 6, 2020, Plaintiffs sent Defendant an executed copy of the Deed of Assignment with the phrase about the Consulting Agreement. (D.I. 8-6 at 2, 11–12 of 14). The signature on the Deed of Assignment was May 13, 2018.[5] (D.I. 8-6 at 12 of 14). There appears to be factual support for Defendant's claim that it was not until October 6, 2020 that Plaintiffs sent the Indian assignment document in the form that Defendant requested (that is, with the "further to the Consulting Agreement" language). As far as I can tell from the record, what the Indian Patent Office ultimately would determine to be acceptable was uncertain until that Office granted the patent to Defendant on June 25, 2021. (D.I. 152-2 at 287 of 523).

I was not certain from the record whether the October 6, 2020 Indian assignment document had been filed with the Indian Patent Office. It seemed strange to me that after obtaining the "properly signed" document (D.I. 163 at 6), Defendant appeared to have done nothing with it. I followed up that concern with an oral order asking the parties if the October 6, 2020 assignment was filed. (D.I. 179). Both parties advised that it had not been filed in the Indian Patent Office. (D.I. 180 at 2; D.I. 181 at 1). The oral order requested, if it had not been filed, whether there was any information in the record why not. (D.I. 179). The answer was that the explanation was not in the record. (D.I. 180 at 4; D.I. 181 at 1).

Defendant nevertheless proceeded to explain why the Indian assignment document had not been filed after October 6, 2020, even though it was "properly signed." In short, Defendant

---

[5] Plaintiffs stated that the executed Deed of Assignment had been previously sent to Defendant on December 31, 2018. (D.I. 8-6 at 2). It seems most likely that what was sent to Defendant on December 31, 2018 was the "modified" version of the Deed of Assignment.

6

says it had not been "properly signed," and the statement to the contrary was "incorrect." (D.I. 181 at 3 n.1). Defendant stated that it was not properly signed for two reasons. I understand one of them, which is that the purported date of Plaintiff Mir's signature was backdated by more than two years and therefore "false." (*Id.* at 1–2). The other one, which is that Plaintiff Mir signed in an individual capacity rather than as an officer of the MirTech corporation, is less obvious, mostly because Plaintiff Mir signed the exact document Defendant asked him (albeit two years earlier) to sign. (*Id.* at 3; *compare* D.I. 8-4 at 4–5 of 19 *with* D.I. 8-6 at 11–12 of 14). I take it Defendant wanted Plaintiff Mir to add his corporate title (D.I. 181 at 3 n.1), which he did not. In any event, I am satisfied that the failure to file the Indian assignment document with the Indian Patent Office does not show that Defendant and its counsel did not have good reason to believe that they needed to pursue Plaintiffs to get the signed documents in the form they believed was needed.[6]

Plaintiffs raise the signing of documents in connection with Canadian and Chilean patent applications as "False Representations." (*See* D.I. 152 at 5–6).

In regard to the Canadian Patent Application No. 2,910,633, Plaintiffs state, in effect, that they had signed all necessary documents by some time in 2018. (D.I. 152 at 13–14). Defendant responds that while Plaintiffs had signed a number of relevant documents (D.I. 163 at 6–7), there was one—the Revocation document--that Plaintiffs did not sign until October 1, 2020. (*Id.*; D.I. 8-6 at 10 of 14). Defendant's correspondence supports its contention. (*See, e.g.*, D.I. 8-8 at 3 of 16; D.I. 73-3 at 29 of 37). Plaintiffs do not make an argument in their motion that Defendant did not need the Revocation document signed by Plaintiffs, and do not address Defendant's response

---

[6] In the end, the Indian Assignment document Plaintiff Mir signed at the end of 2018 turned out to be sufficient. That fact does not show that Defendant and its counsel did not have good reason to believe that their version of the Indian assignment document was necessary.

7

(D.I. 163 at 7) at all in their reply brief. It is Plaintiffs' burden to show a Rule 11 violation. *See, e.g., Graceway Pharms., LLC v. Perrigo Co.*, 2010 WL 2521026, at *5 (D.N.J. June 10, 2010). Plaintiffs have not shown any false statement by Defendant, let alone that Defendant did not have a reasonable basis for seeking damages because Plaintiffs did not sign the Revocation document before October 2020.

Plaintiffs' argument about the Chilean patent applications is skimpy. Plaintiffs state that they signed the necessary document in 2018. (D.I. 152 at 15). Defendant's response is, though perhaps true, Plaintiffs did not send it to Defendant until October 2020. (D.I. 163 at 7). Defendant points out that Plaintiffs "previously conceded" that they did not send the disputed document to Defendant until October 2020. (*Id.*). Defendant cites to the record for this point, which indeed supports its contention that Plaintiffs sent the document to Defendant in October 2020, though I am not so sure that Defendant "conceded" anything.[7] (*See* D.I. 110 at 2; D.I. 8-6 at 2 of 14). Plaintiffs have not shown any false statement, let alone that Defendant did not have a reasonable basis for seeking damages because Plaintiffs did not provide the Chilean document before October 2020.

As for the assertion that Plaintiffs had not argued in their briefing that they signed the necessary documents, I have already agreed with Defendant on that point. In a Memorandum Opinion I issued on May 1, 2023, I said:

> AgroFresh argues that the Mir Parties breached the Private Settlement Agreement and Final Consent Judgment at least five different times with respect to these documents—each time (July 25, 2018, December 20, 2018, April 12, 2019, January 15, 2020, and September 22, 2020) the Mir Parties were asked to sign the documents and they failed to do so. (D.I. 72 at 15). AgroFresh contends that it

---

[7] I note that at D.I. 110 at 2, Plaintiffs also say that the document was "Completed and sent to AF on 12-31-2018." The record makes clear that the document was sent on October 6, 2020. Whether it was also sent before that is not proven by anything Plaintiffs cite in their motion.

> suffered damages in the amount of [attorney's] fees it spent for these additional attempts to get the Mir Parties to sign the documents. (D.I. 72 at 17; D.I. 89 at 10).
>
> To sum up, AgroFresh informed the Mir Parties that these documents required Dr. Mir's signature to confirm ownership of the foreign patent applications, requested the Mir Parties to execute the documents, and the Mir Parties failed to execute the documents on numerous occasions. (D.I. 8-4, Ex. DD at 2; D.I. 72-3 at 29-31; D.I. 8-8, Ex. HH at 2-3; D.I. 8-5, Ex. EE at 1-2). The documents appear to be what AgroFresh represents them to be—documents pertaining to the transfer of the foreign patent applications. The communications instructing the Mir [Parties] to sign the documents to convey ownership of the patent applications to AgroFresh, along with the documents themselves, are sufficient for AgroFresh to make out its prima facie case that the Mir Parties had an obligation to execute these documents and breached that obligation whenever they failed to do so.
>
> The Mir Parties did not address or argue in their Answering Brief why the documents related to the Chilean, Canadian, and Indian patent applications were not necessary or appropriate to convey ownership of [these] foreign patent applications, why the Mir Parties otherwise were not obligated to execute the documents, or that they had met their contractual obligations by executing the documents when initially requested.

(D.I. 107 at 8–9 (footnotes omitted)). I think that is the law of the case. I am not going to revisit it.

Plaintiffs claim that two footnotes in Defendant's Opposition to [Plaintiffs'] Amended Motion are "indisputabl[y]" false. (D.I. 152 at 11–12, quoting D.I. 116 at 7 n.5, 8 n.6).

Plaintiffs identify footnote 5, which asserts a particular Canadian patent application (No. 2,967,044) is irrelevant to the litigation. (D.I. 116 at 7 n.5). Plaintiffs say that is false because the patent was cited as being at issue in a July 25, 2018 letter. (D.I. 164 at 8–9). Something that was an issue in 2018 need not still be an issue five years later, either because it was satisfactorily resolved or because it was no longer thought to be worth pursuing. Plaintiffs' argument lacks a basis in logic.

Plaintiffs identify footnote 6, which states that Plaintiffs sent two "altered" documents to Defendant on December 31, 2018. (D.I. 116 at 8 n.6). Inasmuch as the email described the

9

documents as "modified" (D.I. 73-3 at 13 of 37 (email of December 31, 2018)), I do not see any basis for Plaintiffs' allegation that that footnote is false.

Plaintiffs have wholly failed to show any Rule 11 violation or any false statement. The Rule 11 motion is baseless. As Defendant notes, Rule 11(c)(2) of the Federal Rules of Civil Procedure provides that I "may award" attorney's fees to it as the "prevailing party" on this motion. (D.I. 163 at 19). Defendant is the prevailing party on the Rule 11 motion. Since I do not think Plaintiffs were even close to showing a Rule 11 violation, I think it is appropriate to award attorney's fees to Defendant.

Plaintiffs listed three other bases for sanctions: (1) 28 U.S.C. § 1927; (2) ABA Model Rule 3.3 of Professional Conduct; and (3) Delaware Rule of Professional Conduct 3.3(a)(1).[8] (D.I. 152 at 1, 15–17, 20). Plaintiffs do not make any separate argument for sanctions pursuant to these authorities. Essentially for the same reasons that I do not see that Plaintiffs have shown any Rule 11 violations by Defendant's counsel, I also do not see any proof of lack of candor that would constitute violations of the cited statute or rules. Therefore, there is no basis for any of the other sanctions that Plaintiffs seek.

I will enter a separate order consistent with this memorandum.

_____
United States District Judge

---

[8] Plaintiffs also sought a "referral to the Bar Disciplinary Committee." (D.I. 152 at 1, 20). There is no such thing as the Bar Disciplinary Committee. Presumably, this is a request for a referral to the "Office of Disciplinary Counsel." Since I do not see any misconduct by Defendant's counsel, I am not going to do this.